# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**GARY D. GARRETT,**

      **Plaintiff,**

vs.                                                                                                     Civ. No. 01-0265 BB/RLP

**JO ANNE B. BARNHART,**
**Commissioner of the Social**
**Security Administration,**

      **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.       Plaintiff, Gary D. Garrett (Plaintiff herein), filed applications for Disability Income Benefits ("DIB," herein)and Supplement Security Income ("SSI," herein) on August 29, 1994, alleging disability commencing October 1, 1991, due to back problems. (Tr.151, 145, 201). He was last insured for DIB as of March 31, 1995. An administrative law judge ("ALJ" herein) found he was disabled as of March 1, 1998,[2] and rendered a partially favorable decision awarding Plaintiff SSI as of that date, and denying his claim for DIB. The matter now before the court is Plaintiff's Motion

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

[2] Plaintiff appeared at two prior administrative hearings. He was initially found capable of performing the full range of light work. (Tr. 255-264). This decision was appealed to the Appeals Council, which vacated the decision and remanded to the ALJ for resolution of specific issues. (Tr. 279-281). Following the second hearing he was to found to retain the residual functional capacity for a limited range of work, including this prior relevant work. (Tr. 12-18). The Appeals Council declined to review this decision, and appeal was taken to the District Court, Civ. No. 98-1531JP/KBM. The District Court reversed the denial of benefits and remanded for additional proceedings. (Tr. 359-366). Appeals Council subsequently remanded the matter for a third administrative hearing. The decision from this third hearing is currently before the court.

to Reverse or Remand Administrative Agency Decision. (Docket No. 10).

## I. Issues on Appeal

    A.    Whether the Plaintiff is entitled to a Remand pursuant to Sentence Six of §42 U.S.C. 405(g), in order to present additional evidence not previously presented to the ALJ.

    B.    Whether the ALJ failed to develop the record with regard to Plaintiff's severe mental impairment.

    C.    Whether the ALJ erred in determining Plaintiff's date of onset of disability.

## II. Standard of Review

2. The court reviews the Commissioner's decision to determine whether the record contains substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

## III. Analysis

3. Plaintiff first experienced back problems in the early 1970's while in military service. (Tr. 377). He was discharged from the service on July 30, 1976, with a 20% disability rating based upon lumbosacral spondylosis and spondylolysis. (Tr. 252). Plaintiff worked in numerous jobs after that time, but stopped working in 1991 because of increasing low back discomfort. (Tr. 195, 231).

4. There is no record of medical care relating to his back until August 1993, when he consulted

Richard A. Farris, D.C., for complaints of back pain. He attended four chiropractic sessions, with little improvement noted. (Tr. 222-223).

5.  The following month Plaintiff was seen at the Veterans Administration Medical Center ("VAMC" herein), where x-rays of his back showed minimal degenerative changes in his lower lumbar area, with no evidence of disc space narrowing. (Tr. 224). No clinical report accompanies this x-ray report.

6.  In written materials submitted on August 31, 1994, Plaintiff stated that he had been seen on one occasion at a Veterans Administration Outpatient Clinic, and was prescribed Motrin, 2400 mg/day. (Tr. 203).

7.  Plaintiff was evaluated by an orthopedic surgeon, Joseph Neustein, M.D., on February 21, 1994, for periodic low back discomfort sometimes radiating to the left side of his back, with no radicular symptoms down his leg. (Tr. 225). Dr. Neustein found restricted range of forward flexion of the lumbar spine with pain on extension but no tenderness on palpation. Id. He diagnosed chronic, recurrent lumbosacral sprain, and stated that Plaintiff would be fit to work in a light duty position. (Tr. 226).

8.  Plaintiff's next medical evaluation occurred on January 11, 1995, when he was examined by Walter D. Trafton, M.D., a specialist in occupational medicine. Dr. Trafton conducted this evaluation on behalf of the Disability Determination Unit. (Tr. 231-239). Dr. Trafton noted several abnormal findings on observation and examination. Plaintiff favored his left leg and was in apparent discomfort while walking, he had crepitation and patellar grinding of the left knee, patellar grinding of the right knee, measurable atrophy of the left thigh, and measurable weakness of the left leg (70% of the right). In terms of his back, Dr. Trafton noted that Plaintiff was tender to palpation over the lumbosacral

spinous process and the adjacent paravertebral musculature, but had no muscle spasm. The range of motion of his back was also reduced[3] and he had a positive straight leg raising test.[4] He was able to squat and walk on his heels and toes without difficulty. Dr. Trafton diagnosed mild to moderate patellar femoral chondromalicia and spondylolysis with some radiculopathy involving left leg weakness, atrophy and gait impairment. Based on his exam, Dr. Trafton prepared a residual functional capacity assessment which stated that Plaintiff's standing and walking was limited to two hours per day, 30 minutes without interruption, and that sitting was also limited to two hours per day, 1 hour without interruption. (Tr. 234-235).

9. Plaintiff's next medical examination of record occurred on July 7, 1997, when he was evaluated by John M. Allen, M.D., an orthopedic surgeon, at the request of the Disability Determination Unit. (Tr. 288-291). Plaintiff complained of constant low back pain which increased with standing or working too long and which eased with reclining and heat. He further stated that his back pain had not changed for the past four years. He also described pain radiating to his legs, knee pain and weakness, shin pain, problems with his left shoulder, left rib pain constant for that past two years, neck pain, depression and irritability. He stated that he could sit for 2 ½ hours, stand for 15 minutes, walk for 1 ½ miles and lift 25 lbs. Dr. Allen found few abnormalities on physical examination[5], and diagnosed degenerative joint disease by radiology. He also recommended an MRI

---

[3]Flexion-Extension: 50 degrees (normal 0-90 degrees); Lateral Flexion: 10 degrees bilaterally (normal 0-20 degrees).

[4]Fifty degrees on the right and 30 degrees on the left while supine; 60 degrees while sitting.

[5]Variable limp, marked when he first stood up and began walking, and then steadily diminished. Normal range of motion of the C-Spine with no pain complaints on AROM (active range of motion) and slight pain only on very firm palpation of the cervicodorsal junction. Upper limbs: Symmetrical AROM with no No pain complaints or pain on palpation of the shoulders. Light touch perception intact. Palmer skin was soft, but with soft calluses at the base of several digits. TL spine: Normal range of motion with pain complaints

of the cervical spine. (Tr. 291).

10. Plaintiff was examined at the VAMC later the same month, for evaluation of his service related disability. The clinical examination conducted by Dr. Moinder Mital disclosed relatively few abnormalities.[6] (Tr. 410-413). Apparently because of the discrepancy between Plaintiff's complaints of pain and physical examination, Dr. Mital recommended CAT scan evaluation of the lumbosacral spine. (Tr. 413). CAT scan performed on August 8, 1997, disclosed a diffuse disk bulge at L5-S1 with a broad-based left sided paracentral protrusion impinging on the thecal sac and traversing the left S1 nerve root, a second diffuse central bulge at the L4-5 level, mild in nature and moderate bilateral facet arthropathy at L5-S1 and L4-L5. (Tr. 413-414).

11. Dr. Mital's clinical evaluation and the CAT scan findings were subsequently evaluated by Dr. Paul Echols on February 24, 1998, again in connection with Plaintiff's service related disability. Dr. Echols concluded:

> These findings, taken in context with the physical examination, confirm the following:
> 1) moderate lumbar spondylosis (facet arthropathy confirmed by lumbosacral CT scan); 2) degenerative disc abnormalities at L5/S1 and L4/L5, probably causing the

---

at the limits of AROM, but no pain even on firm palpation of the TL-spine, apart from the comment "It feels a little different there" upon vigorous palpation of the LS junction. No pain on palpation of the SIJ's (sacro-iliac joints). No trigger points or muscle spasm. Lower limbs: Level pelvis, Circumferences of lower limbs within 1/4 inch. Knee and ankle reflexes symmetrical. Light touch perception intact. Knee AROM 0-140 x 2. No effusions, no soft tissue thickening. Symmetrical stability of cruciates and collaterals. Occasional "clunks" on palpation of patellar femoral articulation, but no consistent crepitus. No pain on patella femoral compression, o pain on palpation beneath the patella margins. No pain on palpation of joint margins. SLR 70 x 2 active, sitting. Can stand on heels, toes, sides of feet and deep squat, with good trunk stability. (Tr. 290).

[6]No apparent discomfort; no gait abnormality; able to walk on heels and tip toes without difficulty; able to do deep knee bend and get up with ease; level iliac crests; erect spine; minimal, nonsignificant scoliosis; no paraspinous muscle guarding or spasm; decreased range of motion in the lumbar spine, which did not cause significant discomfort; negative straight leg raising exam, Lasegue test, bow string tests Patrick test, femoral nerve stress test and Ely test; bilaterally tight hamstrings; normal and equal DTRs; No evidence of sensory or motor deficit or atrophy in the lower extremities. (Tr. 411-412)

> patient's present symptoms. . . The presentation of lumbar symptoms documented in the patient's medical record makes it more likely than not that the patient's military service may have caused or exacerbated the normal tendency of degenerative disc changes and arthritis in the weight-bearing joints across the lumbar facets to occur.

(Tr. 408-409).

12. Plaintiff's service related disability was increased from 20% to 40%. Plaintiff's wife testified at the third administrative hearing that the increase began in March 1998. (Tr. 349).

**IV Discussion**

    **A.    Whether the Plaintiff Is Entitled to Remand Pursuant to Sentence Six of §42 U.S.C. 405(g), in Order to Present Additional Evidence Not Previously Presented to the ALJ.**

13. Plaintiff attached to his reply brief a letter dated March 18, 1998, from the Department of Veterans Affairs, indicating that his VA disability benefit was increased to 40% effective February 1, 1992. (Docket No. 13, Ex. A2). This evidence was not presented to the ALJ at the administrative hearing conducted on November 30, 2000. If new evidence is presented directly to a reviewing court, the court may remand to the Commissioner only if the evidence is material and the claimant shows "good cause for the failure to incorporate such evidence into the record in a prior proceeding." §42 U.S.C. 405(g). Plaintiff fails the good cause requirement.

14. Good cause is present when evidence is discovered after the Commissioner's final decision and the claimant shows that he "could not have obtained that evidence at the time of the administrative proceeding." **Key v. Heckler**, 754 F.2d 1545, 1551 (9th Cir.1985) (citation omitted); see also **Heimerman v. Chater**, 939 F.Supp. 832, 834 (D. Kan. 1996); "Order, Based on New Evidence Provision of 42 U.S.C.A. Sec. 405(g), That Additional Evidence Be Taken in Administrative Proceeding to Establish Eligibility for Benefits under Social Security Act," 152 ALR

Fed. 123, §§60, 64, 76 (1999). In this case, Plaintiff had possession of the March 18, 1998, letter prior to the hearing before the ALJ, but did not provide it to his counsel. (Docket No. 13, p. 2). The failure of Plaintiff and his attorney to communicate does not constitute good cause.

> **B. Whether the ALJ Failed to Develop the Record with Regard to Plaintiff's Mental Impairment.**

15. The ALJ found that Plaintiff had a severe mental impairment, depression, but that it was of recent origin, and that there was no evidence of a medically determinable psychological impairment prior to March 1, 1998. (Tr. 327). Plaintiff contends that the ALJ erred by not obtaining a consultative evaluation or clarification from Plaintiff's treating physician regarding the date of onset of his depression.

16. Plaintiff filed an earlier appeal in this court, challenging the denial of benefits following this second hearing before an ALJ. (**Garrett v. Apfel**, D.N.M. CV 97-1531 JP/KBM). One of the issues raised in that appeal was whether the ALJ erred by not preparing a Psychiatric Review Technique (PRT) Form. The court found that Plaintiff had failed to present evidence that would mandate the preparation of the PRTF.

> I am unable to find that Plaintiff presented any evidence that he suffered from a disabling mental impairment which would mandate the completion of a PRT. A PRT must be completed if "there is evidence of a mental impairment that allegedly prevents a claimant from working." **Cruse v. United States Dept. of Health and Human Servs.**, 49 F.3d 614, 617 (10th Cir. 1995).
>
> The only evidence that refers to a mental impairment relates to depression, more aptly described as "bad moods," from which Garrett suffers *because* he is unable to work and the doctors cannot seem to help him. (Citing to Plaintiff's testimony at 11/19/97 Administrative hearing, Tr. 121-122). Nothing in the record shows that Garrett ever sought treatment for depression or that he was unable to work because of depression, even when considering it in combination with his back problems. The evidence relating to depression falls far short of the requirement that a mental impairment be severe enough to prevent a claimant from engaging in substantial

7

gainful activity for a year or longer. **Thompson, 987 F.2d at 1486 (10th Cir. 1993); 42 U.S.C. §423(d)(1)(A);** *see also* **Hawkins v. Chater**, 113 F.3d 1162, 1168 (10th Cir. 1997) (where claimant's allegation was viewed as an unsupported and isolated comment, it was insufficient to raise suspicion of a non-exertional impairment.).

(Tr. 364-365).

17. The situation has not changed. Plaintiff did not seek counseling for his mental problem until 1999 or 2000. (Tr. 424). The form prepared by Dr. Farmer on November 20, 2000, addressed his mental impairment as of that date. (Tr. 413-422). No evidence was submitted indicating a disabling mental impairment prior to March 1, 1998, the date the ALJ found Plaintiff disabled due to his physical impairments.

### C. Whether the ALJ Erred in Determining Plaintiff's Date of Onset of Disability

18. "In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20, **West's Social Security Reporting Service, 1983-1991** (1992) at 50. Social Security Ruling 83-20 recognizes that at times it may be necessary to infer the onset date. In that event the ALJ should call on the services of a medical advisor at the hearing. Id. at 51. A medical advisor need be called only if the medical evidence of onset is ambiguous. Id. at 51; **Reid v. Chater**, 71 F.3d 372, 374 (10th Cir. 1995). The ALJ must state a convincing rationale for the onset date selected, SSR. 83-20, **West's Social Security Reporting Service, 1983-91**, at 52; **Ivy v. Sullivan**, 898 F.2d 1045, 1048 (5th Cir. 1990), but his reasons need be supported only by the usual "substantial evidence" and need not refute other potentially reasonable dates. **Magallanes v. Bowen,** 881 F.2d 747, 750 (9th Cir. 1989); **Blankenship v. Bowen**, 874 F.2d 1116, 1121 (6th Cir. 1989); **Pugh v. Bowen**, 870 F.2d 1271, 1278-79 (7th Cir. 1989).

19.     Plaintiff alleged a date of onset of disability of October 1, 1991. (Tr. 145, 201). The ALJ found that he had not engaged in substantial gainful activity at any time in question. (Tr. 329). The ALJ found that Plaintiff was able to perform the full range of sedentary work until March 1, 1998. (Tr. 325, 327-328, 330). Accordingly, his finding of this different date of onset was based on medical and other evidence concerning impairment severity. SSR 83-20.

20.     The ALJ listed several factors in support of his finding. I will discuss the most relevant:

   **a)     Dr. Trafton's consultative evaluation of January 11, 1995.**

   It is difficult to see how this report provides substantial evidence that Plaintiff retained the residual functional capacity for sedentary work as of that date. Dr. Trafton recorded numerous objective findings indicative of functional limitation. (See ¶8, supra). The medical source statement of ability to perform physical activities he prepared indicates that Plaintiff did not have the residual functional capacity for any work. (Tr. 234-235). The ALJ cited to and quoted from Dr. Trafton's report. He did not indicate whether he accepted or rejected his findings, and did not address in any way Dr. Trafton's assessment of Plaintiff's functional abilities.

   **b)     The state agency medical consultant report of February 14, 1995, which indicated Plaintiff was then capable of light work.[7]**

   This report was by a non-examining physician, and was based in large part on Dr. Trafton's report. (Tr. 156). The state agency physician's evaluation of Plaintiff's functional abilities, is markedly different from Dr. Trafton's, and gives no rationale for the different

---

[7]The ALJ stated that this report was given no significant weight because it did not apply to the time period beginning March 1, 1998. (Tr. 326). The court infers this comment to indicate that the ALJ considered the report of little value in evaluating disability *after* of that date.

conclusions reached.

**c)** **Dr. Allen's consultative evaluation of July 7, 1997.**

Dr. Allen's evaluation found no significant abnormality. (See ¶ 9, supra). He did not, however, consider radiological evidence that was subsequently available.

**d)** **Dr. Mital's treating physician evaluation of July 31, 1997.**

Dr. Mital found few abnormalities on physical examination, and none which he felt would explain the back pain Plaintiff complained of. (Tr. 411-413). Of significance, however, Dr. Mital recommended a CAT scan, although he doubted such a scan would explain Plaintiff's symptoms (Tr. 413).

The ALJ did not mention the CAT scan that was performed on August 8, 1997. This scan confirmed a "diffuse disk bulge at L5-S1 with a broad-based left side paracentral protrusion which impinges on the thecal sac and the traversing left S1 root," a "diffuse central bulge, mild in nature" at L4-5, and " moderate facet arthropathy" bilaterally at L5-S1 and L4-5. (Tr. 413-415).

The ALJ also did not address the report of Paul Echols, a physician who evaluated these CAT scan findings for the VA, which tied Plaintiff's complaints of pain to the CAT scan findings. (Tr. 408-409).

**e.** **Plaintiff's use of 300 mg. of powdered aspirin as of July 31, 1997.**

The record also indicates that Plaintiff used higher doses of different pain medication prior to the date he was last insured for DIB. (Tr. 217, 231).

**f.** **Plaintiff's credibility.**

The ALJ made inconsistent findings regarding Plaintiff's credibility. He initially stated that Plaintiff's subjective allegations were generally credible in light of the record as a whole.[8] (Tr. 326). He then cited to Plaintiff's statements regarding functional limitations made to Dr. Mital in July 1997, and stated except for lifting ability, these statements were not fully credible. (Tr. 328).

      **g.    An increase of military services related disability benefit from 20-40% as of March 1998.**

The ALJ based this factor on testimony presented at the administrative hearing. (Tr. 346, 349).

      **h.    Dr. Ashdown's evaluation of July 27, 2000.**

Dr. Ashdown's evaluation clearly indicated a residual functional capacity for standing, or sitting that was less than that necessary for sedentary work. (Tr. 325-326).

21.    The date of onset of Plaintiff's disability must be inferred. The medical evidence is ambiguous as to the date. That ambiguity is not resolved by the factors relied upon by the ALJ, and the ALJ did not state a convincing rationale for the date selected. The ALJ should have called a medical advisor in order to determine the date of onset of disability.

## V.    Recommended Disposition

22.    For the reasons stated above, I recommend that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision granted in part and denied in part as follows:

    A.    The motion to remand this matter pursuant to Sentence Six, §42 U.S.C. 405(g) be

---

[8]The ALJ followed up this comment by stating that testimony indicated that Plaintiff's problems had become severe only in the past two years, citing to Plaintiff's low tolerance for riding in a car. (Tr. 326). The testimony, however, does not state the increased severity began in the past two years, but "in the last few years." (Tr. 352).

denied.

B. The Motion to Reverse the Decision of the Commissioner for failing to develop the record with regard to plaintiff's mental impairment be denied.

C. The Motion to Reverse the decision of the Commissioner and Remand to determine date of onset of disability be granted. On remand, the Commissioner shall consult a medical advisor to determine the date of onset of physical disability, that is, whether it is prior to March 1, 1998. Plaintiff will be permitted to submit additional evidence related to date of onset. The Commissioner shall provide a documented rationale for the date onset determined.

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**